UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAULIUS SIMOLIUNAS

        Plaintiff,                         Case No. 06-11465

vs.                                        HONORABLE PAUL V. GADOLA
                                             HONORABLE STEVEN D. PEPE

CITY OF DETROIT

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON SUMMARY JUDGEMENT MOTIONS (Dkt #27, 29, & 31)**

**I.    PROCEDURAL HISTORY**

Plaintiff, Saulius Simoliunas, and Defendant have filed cross motions for summary judgement" (Dkt. # 27 & # 29). Plaintiff filed a response to Defendant's motion (Dkt. # 31). These motions were referred to the undersigned and will be heard under 28 U.S.C. § 636(b)(1)(B) (Dkt. # 32). For the following reasons, **IT IS RECOMMENDED** that Plaintiff's motions for summary judgment (Dkt. ## 27, 29) be **DENIED,** and Defendant's motion be **GRANTED**.

**II.    BACKGROUND FACTS**

    **A.    Alleged Cause of Action**

Plaintiff, in his Complaint, alleges that Defendant, the City of Detroit, violated the Age Discrimination in Employment Act of 1967 ("ADEA") when it moved him from the Support Group to Maintenance Group replacing him with younger employees (Dkt. # 1, p. 3). In his motion for summary judgment, Plaintiff avers that notwithstanding an apparent agreement

between the union and the Defendant, the rotation of the Plaintiff violated Section 623 §4(c)(1)(2)(3) of the ADEA (Dkt. # 27, p. 2).[2]

In its motion for summary judgment, Defendant acknowledges that Plaintiff was rotated from the Support Group at the Waste Water Treatment Plant into the Detroit Water and Sewage Department's Maintenance Group (Dkt. # 29, p. 1). Defendant claims that Plaintiff's rotation was part of an effort to address allegations that black males were denied highly desirable jobs within the Support Group at the Waste Water Treatment Plant and the Operations Group in the Detroit Water and Sewage Department (Dkt. # 29, p. 1).

As a result, Defendant implemented a program that sought to (1) fill jobs in an open and competitive manner, and (2) provide that each assignment have staggered terms of limited duration. Plaintiff had been a member of the Support Group since 1995 (Dkt. # 29, p. 3). The Support Group was notified of the rotation plan in 1999 (Dkt. # 29, Ex. C).

Plaintiff's physician, Dr. Ghadai informed the Department that Plaintiff would be unable to (1) rotate to a new shift each trimester; (2) work at least four hours overtime or eight if the incoming chemist cannot come in; (3) collect 20 pound samples, drive to Zug Island and perform analysis; or (4) operate the chlorination and de-chlorination processes (Dkt. # 29, p. 7). Given these medical restrictions, and Plaintiff's statement that he did not oppose the rotation, Plaintiff

---

[2]ADEA Section 623 § 4(c) states: It shall be unlawful for a labor organization-
(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his age;
(2) to limit, segregate, or classify its membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's age;
(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

was given the following accommodations: (1) Plaintiff remained on the day shift; (2) he was not required to work overtime; and (3) he was not required to handle the chlorination or de-chlorination. Plaintiff was required to drive to Zug Island, perform analyses, and collect samples – not in excess of 20 pounds – and clean samplers. Plaintiff's salary, hours, title and benefits remained unchanged (Dkt. # 29, p. 8).

## III. ANALYSIS

### A. The Legal Standards

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law"

3

> because the non-moving party has failed to make a sufficient showing
> on an essential element of her case with respect to which she has the
> burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely "upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When considering a motion for summary judgment, the party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party is unable to meet his or her burden of proof, summary judgment is clearly proper. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir.2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir.1991).

**B.     Factual Analysis**

    *1.     Plaintiff's Motion for Summary Judgment*

Other than claim that the Defendant has discriminated against him based on his age, Plaintiff has done little to establish that his motion for summary judgment should be granted. The party bringing the summary judgment motion has the initial burden of informing the district

court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Univeral, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).

While Defendant has not directly replied to Plaintiff's motion, Defendant's motion for summary judgment alleges sufficient, specific facts that defeat Plaintiff's motion. Accordingly, summary judgment for Plaintiff is inappropriate and **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment against Defendant, the City of Detroit, be **DENIED.**

*2.     Defendant's Motion for Summary Judgment*

Defendant, in its motion for summary judgment, addresses 6 arguments regarding the merits of Plaintiff's Complaint:

> (1) Plaintiff failed to file his motion with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discriminatory act;
> (2) Employer's decision to rotate Plaintiff was not motivated by age;
> (3) Plaintiff has not established a *prima facie* case of age discrimination under the ADEA;
> (4) Plaintiff's retaliation claim must fail as a matter of law;
> (5) Assuming Plaintiff has established an ADEA claim, any violation of the Act was not willful; and
> (6) Plaintiff failed to establish damages under the ADEA.

Dkt. # 29.

*(1) Employer's decision to rotate Plaintiff was not motivated by age.*

Defendant argues that Plaintiff was rotated as part of a plan to address "race discrimination claims and to provide full and fair opportunity to all employees at the waste water treatment plant" (Dkt. # 29, p. 5). Citing *Hazen Paper Co. v. Biggins*, Defendant asserts that age was not a motivating factor in the personnel decision and thus the decision to transfer Plaintiff

5

does not constitute an improper factor under the ADEA. *Hazen Paper Co. V. Biggins*, 507 U.S. 604 (1993).

Plaintiff, in his Cross-Motion Against Defendant's Motion for Summary Judgment, counters that "age was the dominant factor" in the decision to move himself from the Support Group (Dkt. # 31, p. 2). Plaintiff asserts that of those staffed on the Support Group, he was the only one of 13 pertinent individuals who was moved to Crew Work and that he was moved to this post on account of his age.

Plaintiff has provided no facts to support his allegation when in fact the overwhelming evidence suggests the contrary – Defendant initiated an extensive review of its workplace policies and implemented a policy that treated Plaintiff like all other employees in the laboratory. In reduction in force cases, this Circuit has held that a reduction in force is legitimate when there is a non-age based reason for such a reduction. *See Blair v. Henry Filters, Inc.*, 505 F.3d 517 (6th Cir. 2007) (holding that employer's reduction-in-force due to business conditions was legitimate, non-age based reason for employee's discharge.). Analogously, transfer of an employee for a legitimate, non-age based reason does not violate the ADEA.

Contrary to his assertions, evidence indicates that other employees, regardless of age, were rotated in and out of the program routinely (Dkt. # 29, Exs. G & I). An internal email from July 2003 suggested that, if qualified individuals applied, three employees, including the Plaintiff could be transferred to crew work. *Id.* at G.

Two years passed before Plaintiff was rotated from his chemist post. Viewing the facts asserted in the light most-favorable to the non-moving party, it is clear that given this broad scale program to counter adverse effects on a racial minority no reasonable fact finder could find that the Defendant's actions were motivated by age.

*(2) Plaintiff has not established a prima facie case of age discrimination under the ADEA*

The Sixth Circuit employs two different tests to determine whether or not plaintiffs properly assert an ADEA discrimination claim. The first test uses the *McDonnell Douglas* burden-shifting framework to analyze age discrimination claims based upon circumstantial evidence. *Wexler*, 317 F.3d at 574 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this approach, an employee must first establish a *prima facie* case of age discrimination. *Id.* Once an employee satisfies this burden, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir.1998). If the employer is able to do so, the burden shifts back to the employee to rebut the employer's proffered reason by showing by a preponderance of the evidence that the employer's articulated reason was a pretext for intentional age discrimination. *Id.*

This approach utilizes the four part *prima facie* test established in *McDonnell Douglas Corp. v. Green*, but adapted for use in cases involving alleged ADEA violations. *McDonnell Douglas Corp. v. Green*, 93 S.Ct. 1817 (1973). The adapted test requires that the plaintiff show: (1) he was a member of the protected class (i.e., age 40 or over); (2) he was qualified to perform the job; (3) he was subject to an adverse employment action; and (4) he was replaced by a younger individual. *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir.1998)[3].

---

[3]The second approach, utilized by the Sixth Circuit seeks to decide ADEA claims "on a case-by-case basis, rather than adopting formalistic approaches ...." *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66 (6th Cir. 1982) (quoting *Sahadi v. Reynolds Chemical*, 636 F.2d 1116, 1118 n. 3 (6th Cir. 1980)). The goal of such an approach is to determine "whether age was a factor in a decision of an employer to terminate an ADEA claimant and whether the age of claimant made a difference in determining whether he was to be retained or discharged." *Id.*

Applying the *McDonnell Douglas* test, there is little argument that *McDonnell* factors (1) and (2) and (4) have been met: Plaintiff is a member of a protected class, Plaintiff is qualified for the job, and Plaintiff was replaced by two younger employees who, at the relevant time, were 37 and 52 years of age. That the 52 year old employee is also a member of a protected age category is irrelevant.

In *O'Connor v. Consolidated Coin Caterers Corp.*, Justice Scalia, speaking for the Court, opined that "because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). Plaintiff was replaced by another member of the same protected class, but it is clear that Plaintiff was replaced by substantially younger employees. Accordingly, factor (4) has been satisfied.[4]

Regarding factor (3), Defendant asserts that Plaintiff suffered no adverse effects noting that the reassignment resulted in no changes to salary, benefits, title or work hours (Dkt. # 29, p. 6). Defendant also provided Plaintiff with the following accommodations: Plaintiff remained on the day shift, he was not required to work overtime, and not required to handle the chlorination or de-chlorination. As noted above, Plaintiff was required to drive to Zug Island, perform analyses, collect samples – not in excess of 20 pounds – and clean samplers (Dkt. # 29, p. 8).

Plaintiff counters that while many accommodations were made to address his doctor's orders, Defendant still "hides other duties assigned to Simoliunas" such that Plaintiff remained

---

[4] At 72 years of age, Plaintiff is 20 years the senior of the oldest employee replacing him. In *O'Connor*, the court determined that the 40 year old, who replaced a 56 year old employee, was "substantially" younger for purposes of the ADEA.

8

on his feet all day, against this doctor's orders (Dkt. # 31, p. 2-3). Plaintiff does not detail what those hidden duties were, and he has failed to show that his job duties required his being on his feet all day. Even if he did show that his duties necessitated standing all shift, Plaintiff's physician did not list any standing restrictions among his medical accommodations. Throughout the course of Defendant's rotation process, Plaintiff received no alteration in pay or title and the accommodations requested by his doctor were met by Defendant. Plaintiff has failed to show that he suffered any adverse effect. Viewing the facts asserted in the light most-favorable to the non-moving party, given the extensive accommodations accorded Plaintiff, it is clear that no reasonable fact finder could conclude that Plaintiff suffered adverse consequences as a result of the City's actions.

Assuming *arguendo* that Plaintiff had established his prima facie case, once an employee satisfies the burden of showing discriminatory effect, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998). To satisfy this burden, the City "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Dept. of Community Affairs v. Burdine*, 101 S.Ct. 1089 (1981).

Defendant argues that Plaintiff's transfer was the result of an detailed and thorough effort to address on-going workplace discrimination against African-American, male employees (Dkt. # 29, p. 2-3). After allegations of racial discrimination had been raised, the Board of Water Commissioners, Department of Water and Sewerage, City of Detroit, commissioned an independent, outside examination of the Department (Dkt. # 29, Ex. A). The ensuing report ("Squire Report") examined allegations of discrimination and provided recommendations to

address those allegations. Chief among the recommendations was a suggestion that a work rotation be implemented (Dkt. # 29, Ex. A, p. 5).

The Board of Water Commissioners charged the Detroit Water and Sewerage Department with developing strategies for implementing the Squire Report's recommendations (Dkt. # 29, Ex. B). The first step taken by the Department was the creation of an open job placement process coupled with a rotation system (Dkt. # 29, Ex. B, p. 3). Notice of this process was provided on March 24, 1999. The Department created a list of job titles and employees subject to rotation on March 29, 1999 (Dkt. # 29, Ex. C). This list included all covered employees, including the Plaintiff, who was not, in any way, distinguished from his colleagues. With this evidence, Defendant has articulated a "legitimate, nondiscriminatory reason for the adverse employment action." *Ercegovich* 150 F.3d at 350 (6th Cir.1998). The Squire Report and the careful efforts to implement it provide a rational explanation for Plaintiff's workplace rotation such that a trier of fact could "rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine* 450 U.S. at 257 (1981).

Having been provided with a legitimate, nondiscriminatory reason for the work rotation, Plaintiff must show by preponderance of evidence that Defendant's "stated reason 1) has no basis in fact, 2) did not actually motivate adverse action or 3) was insufficient to motivate adverse action." *Singfield v. Akron Metropolitan Housing Authority*, 389 F.3d 555 (6th Cir. 2004) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). Plaintiff claims that while Defendant provided workplace modifications, it still "hides other duties assigned to Simoliunas" such that Plaintiff remained on his feet all day, against this doctor's orders (Dkt. # 31, p. 2-3). Plaintiff further claims that Defendant's action was "premeditated and willful" and intended to drive him out of his job (Dkt. # 31, p. 2-3). To support this assertion, Plaintiff notes

that Defendant offered Plaintiff retirement and asked Plaintiff how long he could "bear to stay at this job being the oldest worker in the plant." *See Skelton v. Sara Lee Corp.*, 249 Fed.Appx. 450 (6th Cir. 2007) (Supervisor's comment that employee had "been around since Christ was a baby," was not direct evidence of age discrimination, in violation of ADEA, against employee who was later discharged by reduction in force, since supervisor was not the decision maker in employee's termination, supervisor's statement was not related in any way to termination decision, statement was isolated and irrelevant remark, and employee failed to proffer evidence that there was any temporal proximity between supervisor's statement and his termination.)

Plaintiff's basis for rebutting Defendant's assertion of a legitimate non-discriminatory reason is too thin to be legally sufficient. In discrimination suits, the allegations frequently involve vagaries, innuendoes and assertions of the workplace. *See United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) (acknowledging that discrimination cases present difficult issues for the trier of fact, as "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes"). Accordingly, the Sixth Circuit has held that "caution should be exercised in granting summary judgment once a plaintiff has established a *prima facie* inference of retaliation through direct or circumstantial evidence." *Singfield* 389 F.3d at 564 (6th Cir. 2004).

Even with this Circuit's admonition, Plaintiff has failed to provide sufficient evidence from which a reasonable fact finder could find by a preponderance of the evidence that Defendant's actions had no basis in fact, did not actually motivate their actions and constituted an insufficient motivation for their actions. The evidence undermines Plaintiff's assertions. Workplace racial discrimination is a serious problem that undermines morale and denies qualified employees opportunities for advancement. Based upon allegations of workplace

11

discrimination, Defendant developed a detailed process to examine its workplace practices. This process included the hiring of outside consultants to analyze Defendant's policies and processes as well as to make recommendations to address any problems found. Based on the consultants recommendations, Defendant developed a Support Group Rotation Plan for the Wastewater Treatment Plant which rotates workers in and out of positions. Six years after this rotation plan was instituted, Plaintiff was rotated, for the first time, from his chemist position as he, and another individual who was also rotated, had been in those posts longest.

If Defendant's goal was to remove Plaintiff, it would not have undertaken such an indirect route in doing so. According to Plaintiff, Defendant's investigation of racial discrimination and subsequent development of a rotation plan was mere pretext so that he could be pressured to quit his job. It is inconceivable that all this effort was a pretense for age discrimination. No employer would undertake such a careful and detailed process so that, 8 years later, they MIGHT be able to pressure an individual to leave his job by transferring him from one position to another. Such an action would require a level of malevolence, deviousness and foresight which by all indications Defendant lacks. Accordingly, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**.

### IV. RECOMMENDATION

For the following reasons, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment (Dkt. # 27) be **DENIED,** and Defendant's motion for summary judgment (Dkt. # 29) be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof, as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file

specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections. If the Court determines any objections are without merit, it may rule without awaiting the response to the objections.

Dated: 3/3/08                                                                 s/Steven D. Pepe
Ann Arbor, Michigan                                    United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing ***Report and Recommendation*** was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 3, 2008.

                                                             s/ Alissa Greer
                                                             Case Manager to Magistrate

Judge Steven D. Pepe
(734) 741-2298